**In re Jesse Russell SIMMONS III and Barbara Ann Simmons, Debtors.**

No. 01–21300.

United States Bankruptcy Court, D. Kansas.

Dec. 3, 2002.

Robert A. DuVall, Olathe, KS, for Cooper Communities, Inc.

Christopher J. Redmond, Husch & Eppenberger, Kansas City, MO, pro se.

William F. Schantz, Office of U.S. Trustee, Wichita, KS, for U.S. Trustee.

Joanne B. Stutz, Evans & Mullinix, P.A., Shawnee, KS, for Jesse Russell Simmons, III and Barbara Ann Simmons.

Grant Thornton, Kansas City, MO, for Christopher J. Redmond.

## MEMORANDUM OPINION [1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

To meet the best-interest-of-creditors test for Chapter 13 plan confirmation,[2] the Simmonses' Chapter 13 plan proposed to sell encumbered, non-exempt real property, pay off the lien and distribute the equity proceeds to creditors. The plan was confirmed, the sale and payoff completed, and the net sale proceeds paid to the Chapter 13 trustee. But before the trustee could distribute the proceeds to creditors, the Simmonses moved to convert their case to Chapter 7.

Upon receiving the conversion motion, a case administrator in the Bankruptcy Clerk's office entered an order of conversion according to existing procedures for conversions from Chapter 13 to Chapter 7. Only after the conversion did the Simmonses' attorney file her fee application. The Chapter 7 trustee objects to the timeliness of the fee application because it was filed after the conversion. He also claims that the sale proceeds are property of the Chapter 7 estate that the Chapter 13 trustee should relinquish. The Chapter 13 trustee, on the other hand, denies that the sale proceeds are property of the Chapter 7 estate. Since the proceeds are in his possession, he wishes to distribute them to creditors as the plan directs.

The court agrees with the Chapter 13 trustee that the sale proceeds are not property of the Chapter 7 estate; therefore, they are controlled by the Chapter 13 plan and should be distributed accordingly.[3] The court further rules that the fee

---

1. Joanne B. Stutz of Evans & Mullinix, P.A., Shawnee, Kansas, appears for the debtors, Jesse Russell Simmons III and Barbara Ann Simmons. William H. Griffin appears as the Standing Chapter 13 Trustee. Christopher J. Redmond, the Chapter 7 Trustee, appears through his attorney, Marcus A. Helt of Husch & Eppenberger, L.L.C., Kansas City,

Missouri. William F. Schantz appears on behalf of the United States Trustee.

2. 11 U.S.C. § 1325.

3. The court finds that this proceeding is core under 28 U.S.C. § 157 and that the court has jurisdiction under 28 U.S.C. § 1334 and the

application is deemed timely.

### I. The Procedure

The Simmonses' counsel, Joanne B. Stutz, filed the conversion motion on October 1, 2001, and issued a notice to the Standing Chapter 13 Trustee, William H. Griffin, setting the motion for hearing on the monthly Chapter 13 motions docket scheduled for October 23, 2001.

But, according to customary procedures in the Bankruptcy Clerk's office for conversions from Chapter 13 to Chapter 7, when the case administrator received the conversion motion on October 1, 2001, she immediately entered a conversion order bearing the court's facsimile signature. Since the converted case was no longer a Chapter 13 case, the case administrator also removed the conversion motion from the Chapter 13 motions docket on October 23 and reset it to the Chapter 7 motions docket scheduled for the following day, Wednesday, October 24.

Unaware of the docket day change, Ms. Stutz filed her fee application on October 9 and issued a notice to the Chapter 13 trustee setting the application for hearing on the Chapter 13 motions docket scheduled for October 23, just as she had done with the conversion motion. But again, noting that the case had been converted from Chapter 13 to Chapter 7, the case administrator removed the fee application from the Chapter 13 motions docket set for October 23 and rescheduled it for hearing on the Chapter 7 motions docket set for October 24.

The case administrator also initiated the steps to appoint a Chapter 7 trustee. At the Chapter 7 motions docket on October 24, Marcus Helt appeared for the newly appointed Chapter 7 trustee, Christopher J. Redmond, and orally objected to the timeliness of the fee application. The court continued the objection to a status conference on December 5, 2001. At the status conference, Mr. Helt further contended that the sale proceeds in the hands of the Chapter 13 trustee were property of the Chapter 7 estate. Consequently, he maintained that Mr. Griffin should turn over the sale proceeds to him as the representative of the Chapter 7 estate. The court asked the parties to provide briefs and continued the matter to February 7, 2002, for a status conference. When that date arrived, the court granted the United States Trustee an additional 20 days to file a brief.

### II. The Fee Application

■ The Chapter 7 trustee's objection to the timeliness of the fee application focuses on Fed. R. Bankr.P. 1019(6). Under this rule, a request for payment of a pre-conversion administrative expense is timely only if it is filed before conversion, unless the court fixes another time.

> A request for payment of an administrative expense incurred before conversion of the case is timely filed under § 503(a) of the Code if it is filed before conversion *or a time fixed by the court.*[4]

But Ms. Stutz suggests that her fee application should not be denied "simply because the Court entered the order converting the case prior to the scheduled hearing on the motion to convert."[5] The court agrees.

When the case administrator entered the conversion order on October 1, she did so under a long-standing "notice" procedure used in the Clerk's office for conver-

---

general reference order of the District Court effective July 10, 1984 (D. Kan. Rule 83.8.5).

**4.** Emphasis added.

**5.** Applicant's Brief Response to United States Trustee's Memorandum filed March 6, 2002 (Doc. # 62) at 1.

sions and dismissals of Chapter 13 cases. Under this procedure, the Clerk would accept a "notice" of intention to convert or dismiss a case in those situations where the Code permits a debtor to convert or dismiss a case "at any time." In such cases, counsel were not required to file a motion, notice it for hearing, and obtain an order before a case would be converted or dismissed. Rather, under the established procedure, counsel could file a "notice" of intention that would allow: a Chapter 7 debtor to convert a case from Chapter 7 to 13 under § 706(a); a Chapter 13 debtor to convert a case from Chapter 13 to 7 under § 1307(a); and a Chapter 13 debtor to dismiss a case under § 1307(b). The phrase "at any time" appearing in these Code sections was interpreted to dispense with the need for a motion and an order.

In the months before the Simmonses filed their conversion motion, however, the court had dealt with several bad faith conversions from Chapter 7 to 13. These bad faith cases convinced the court that a change in the "notice" procedure was warranted for conversions from Chapter 7 to 13. Consequently, the court established a local procedure requiring debtors wishing to convert from Chapter 7 to 13 to file a motion and issue a notice setting the motion for hearing at the monthly Chapter 7 motions docket. At the hearing, the court now inquires of interested parties whether there is any evidence that the conversion is being sought in bad faith. By instituting this procedural change, the court hopes to avoid the problems it has experienced with bad faith conversions from Chapter 7 to 13. The court construes the phrase "at any time" to mean "at any time after a motion for the relief and an order" so the court has an opportunity to decide whether the requested relief involves sanctionable bad faith. By making this change, the court does not mean to imply any opinion on whether or not the phrase "at any time"

means "as of right," as counsel often assert when claiming an absolute right to dismiss or convert a Chapter 13 case without filing a prior motion and obtaining a court order.

The new motion procedure, however, was intended to apply only to conversions from Chapter 7 to 13. The preexisting "notice" procedure was continued for conversions from Chapter 13 to 7 because the court had not seen any abuses in conversions running in this direction. The court now notes, however, that § 348(f)(2) expressly recognizes that bad faith may be involved in conversions from Chapter 13 to other Code chapters. That possibility and the circumstances of this case strongly recommend that the procedural change should also apply to conversions from Chapter 13 to 7.

The procedural change intended only for conversions from Chapter 7 to 13 misled Ms. Stutz. When she filed her motion to convert, she used the motion and order procedure that had been made applicable to conversions from Chapter 7 to 13 but not to conversions from Chapter 13 to 7. And although Ms. Stutz filed a conversion motion and noticed it for appearance before the court's regular monthly docket, the case administrator followed the "notice" procedure for conversions from Chapter 13 to 7 and entered an order of conversion on October 1.

Since Ms. Stutz had set her motion for conversion to a hearing on the monthly Chapter 13 motions docket, she justifiably assumed that no conversion order would be entered until the court had ruled on her motion. That this was her honest belief is further supported by her action in setting her fee application on the same Chapter 13 motions docket to which she had noticed the conversion motion.

The court believes some deference should be accorded an attorney's decision

to bring an issue before the court by a motion noticed for hearing. Even if the procedure is incorrect under the Clerk's guidelines, as in this case, the motion should be allowed to come before the court for decision.

The court therefore finds that the fee application should be deemed timely because the changes in the court's procedures misled debtors' counsel who, it will be presumed, would otherwise have filed a timely fee application. Rule 1019(6) grants the court discretion to change the rule by fixing a time by which the application will be considered timely. The court feels it only fair to do so under these circumstances. Therefore, the court rules that Ms. Stutz's application for fees is deemed timely.

### III. The Sale Proceeds

■ In urging that the sale proceeds are property of the Chapter 7 estate, the Chapter 7 trustee's representative, Marcus Helt, is aligned against three opponents: the Standing Chapter 13 Trustee, William H. Griffin; the United States Trustee's representative, William F. Schantz; and the Simmonses' attorney, Joanne B. Stutz. Each of Mr. Helt's opponents argues that the sale proceeds are not property of the Chapter 7 estate and, consequently, the Chapter 13 trustee should distribute the sale proceeds to the plan creditors.

Mr. Helt seeks turnover of the sale proceeds by the authority of Fed. R. Bankr.P. 1019(4), which directs a Chapter 13 trustee to turn over records and property to a qualified Chapter 7 trustee unless the court orders otherwise:

> After qualification of, or assumption of duties by the chapter 7 trustee, any debtor in possession or trustee previously acting in the chapter 11, 12, or 13 case shall, forthwith, *unless otherwise ordered,* turn over to the chapter 7 trustee all records and property of the estate in the possession or control of the debtor in possession or trustee.[6]

The express language of this rule gives the court discretion to order that turnover not be made and, in any event, the rule must give way to a Code section that conflicts with the rule.[7]

The conflicting Code section in this case is § 348(f)(1)(A). It controls the property going into the Chapter 7 estate upon conversion of a Chapter 13 case to Chapter 7. It prescribes, with an exception not applicable here, that upon conversion, only that property of the estate at the time of the filing of the Chapter 13 petition that "remains in the possession of or is under the control *of the debtor* on the date of conversion" becomes property of the Chapter 7 estate:

> (f)(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—

> (A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion .... [8]

If the land and its proceeds had not been devoted to the plan, § 1327(b) would have caused either of them to vest in the debtors at confirmation, and if they remained in the possession or control of the

---

**6.** Emphasis added.

**7.** 28 U.S.C. § 2075: "Such rules shall not abridge, enlarge, or modify any substantive right."

**8.** 11 U.S.C. § 348(f)(1)(A).

debtors at conversion, they would be property of the Chapter 7 estate as § 348(f)(1)(A) provides. But since the Simmonses held undersecured, non-exempt real estate when they filed their Chapter 13 plan (§ 541(a) property), they were required to devote the value of their interest in that property to the plan in order to meet the best-interest-of-creditors test for confirmation.[9] Therefore, their plan initially proposed to sell the real estate, pay off the mortgage and distribute the excess proceeds to creditors. Not only were the sale proceeds devoted to the plan from the beginning, they were also in the possession of the Chapter 13 trustee at conversion, and they still are. Consequently, having been devoted to the plan, the sale proceeds were not acquired by the debtors post-confirmation through § 1327(b) and are not property of the Chapter 7 estate following conversion under § 348(f)(1)(A).

### IV. Continuing Authority of Chapter 13 Trustee

Finally, the Chapter 7 trustee argues that conversion ends the services of the Chapter 13 trustee who, consequently, can no longer distribute the proceeds through the plan. His argument relies on § 348(e) which states: "Conversion of a case under section ... 1307 of this title terminates the service of any trustee or examiner that is serving in the case before such conversion." The court disagrees that this Code section prevents the Chapter 13 trustee from completing plan payments and paying administrative expenses since under this ruling, the sale proceeds are not property of the Chapter 7 estate. The proceeds are still subject to the plan and, in this court's opinion, the Chapter 13 trustee can still wind up the estate and complete the plan distribution under the court's supervision. The court will contin-

ue to have jurisdiction over the Chapter 13 trustee to approve or disapprove his actions.

### CONCLUSIONS OF LAW

The court finds Joanne B. Stutz's fee application is deemed timely.

The Chapter 13 trustee should distribute the sale proceeds according to the plan because they are in his possession and are not property of the Chapter 7 estate under § 348(f)(1)(A). The Chapter 13 trustee may object to the allowance of the fee application, but absent valid grounds for disallowance, the Chapter 13 trustee should pay Joanne B. Stutz's attorney's fees from the sale proceeds as an administrative expense.

The foregoing discussion shall constitute findings of fact and conclusions of law under Fed. R. Bankr.P. 7052 and Fed. R.Civ.P. 52(a). A judgment reflecting this ruling will be entered on a separate document in compliance with Fed. R. Bankr.P. 9021 and Fed.R.Civ.P. 58.

IT IS SO ORDERED.